## ALLEN *v.* ISLAND CREEK COAL CO.

*Landlord and tenant—Holdover tenancy of riverfront property —Boats moored to adjoining land drift by premises surrendered—Fastening barge lines to lessor's land—Obstructing roadway over which lessor claimed easement.*

A lessee of premises having a water frontage on a navigable river, who used the leased premises for the storing of coal and the adjacent water channel for mooring boats, and who attached lines from such moored boats to trees and posts on the leased premises, will not be held liable for rent as a holdover tenant after the expiration of the term of the lease because such lessee, who owned the adjoining property, at various times while making up strings of barges, allowed its boats, although tied to its own property, to extend down in front of the lessor's property and obstruct free entrance thereto, and on one or two occasions months after the alleged holdover tenancy ran lines from its barges and fastened them to lessor's property, and obstructed a roadway on its own property over which lessor claimed an easement.

(Decided June 25, 1923.)

ERROR: Court of Appeals for Hamilton county.

*Mr. C. A. J. Walker* and *Mr. Walter A. Todd,* for plaintiff in error.

*Messrs. Bettinger, Schmitt & Kreis,* for defendant in error.

BUCHWALTER, J. Plaintiff below, Bertha Devin Allen, sought to recover rent for the use and occupancy of certain real estate which had been under

Landlord and Tenant, 35 C. J. §§ 170 (Anno.), 171; 36 C. J. § 1352.

lease to the defendant, the Island Creek Coal Company, on a month to month tenancy.

The claim is made that the said defendant held over and occupied the premises for the period in controversy.

A jury was waived and the cause submitted to the court. Judgment was rendered for the defendant, and to reverse this judgment, plaintiff now prosecutes error.

The plaintiff below, plaintiff in error herein, owns certain land extending from the Baltimore & Ohio Southwestern Railroad right of way to the Ohio river, with a water frontage of about eight hundred feet. This land was devised to plaintiff, and had been held by members of her family, who were her predecessors in title, since 1854. There was testimony to the effect that during all these years there was a roadway extending from Cincinnati avenue through the defendant's property, which adjoins plaintiff's real estate on the east, and through the southeastern portion of plaintiff's property to the Ohio river, this roadway being used by the plaintiff as an outlet to her property.

Numerous leases were introduced showing the use to which the real estate had been put. The first was a lease to the Guyan Valley Fuel Company, and the next, one to the Island Creek Fuel Company, which lease was later taken over and assumed by the Island Creek Coal Company, the defendant herein.

In the lease entered into the first day of November, 1915, there is a provision in reference to the

right of way across defendant's property as follows:

"It is also understood that the right of way over the old roadway through the property of the lessee to the property of the lessor is to be kept open and unobstructed."

A similar provision had been incorporated in some of the preceding leases.

In September, 1917, the then parties, the Island Creek Fuel Company and the plaintiff, entered into a supplemental memorandum of lease, changing the tenancy from a lease for years to a month to month tenancy, and stipulating: "All other terms and conditions of the lease above referred to, to remain as in the original lease." The Island Creek Coal Company, in December, 1917, took over the lease of the Island Creek Fuel Company.

On December 11, 1919, plaintiff notified the Island Creek Coal Company that on and after January 1, 1920, the rent would be raised to $100 per month.

On December 26, 1920, the defendant notified plaintiff: "We will not continue to lease this property after January 1, 1920. We will, at that time, surrender possession to you, and remove all of our property therefrom."

The defendant had used the premises for the storing of coal, had used the deep water channel in front of plaintiff's property, had moored its boats in front of and adjacent to the banks of plaintiff's property, and had attached lines from these boats to posts or trees on the said real estate.

The only question in the case is whether the defendant surrendered the property to the plaintiff

on January 1, 1920, or continued to remain in possession, so as to constitute a holding over under the terms of the prior lease, which would make it liable for rent in accordance with the letter of December 11, 1919, advancing the rent to $100 per month.

Evidence was introduced to show the line of the old roadway, and also that some year prior to the time the controversy arose between the parties a coal elevator had been erected over the right of way, and that prior to January 1, 1920, the defendant had piled coal over the other portions of the old roadway, thereby cutting off all access to the plaintiff's property through and over the defendant's premises.

The plaintiff claims the acts which show a holding over on the part of the defendant were: First. The use of the river front of plaintiff's property, by allowing its barges and part of its harbor fleet to remain in front of said real estate. Second. That the defendant on one or two occasions had a line fastened on plaintiff's property, and connecting with a barge or boat of the defendant. Third. The closing of the old roadway on defendant's property, over which plaintiff claimed an easement, which gave access to her property.

There was testimony to the effect that during the period for which plaintiff claims rent, to-wit, the period after January 1, 1920, steamboats and barges, although tied to the bank of defendant's property, nevertheless hung down in front of plaintiff's property and obstructed her free entrance to the same. This was denied by the defendant, which offered evidence that orders had

been given to the men not to allow any of the boats to remain in front of plaintiff's property, and that the only time any boats belonging to its fleet were in front of said property was at times when the front was temporarily used to clear the drift, or to make up a string of barges. The trial court heard the evidence, and we do not find that the record shows the judgment to be manifestly against the weight of the evidence on this point. It was not such a use by the defendant of the water in front of plaintiff's property as to constitute a holding over under the terms of the lease.

In the second point raised, that the defendant company ran lines from its barges and fastened them to plaintiff's property, there is a conflict in the evidence. But the time that it is contended such acts were done was months after the alleged holding over by the defendant, and could not refer back to January 1, 1920, to constitute a holding over under the month to month tenancy. If the evidence established this fact, it would have been a trespass, and the plaintiff might have pursued her remedy on that basis. The obligation to pay rent on a holding over of a month to month tenancy must be shown from a holding over at that time, and not by some alleged acts of trespass months thereafter.

The third act complained of is the obstruction of the road or right of way over the defendant's property, and this is claimed to be an act of holding over as a tenant of plaintiff's property. The contention of plaintiff is, as this roadway was an appurtenance to the plaintiff's real estate, that as long as this roadway was obstructed by the

piles of coal and the elevator, such obstructions would constitute a holding over on the part of the defendant.

The right of the plaintiff to use this roadway was either by license or under an easement. In the leases referred to there is a definite provision that the right of way is to be kept open and unobstructed during the continuance of the lease. This condition was also included in the memorandum changing the tenancy to a monthly one. The plaintiff could at any time have compelled the defendant to comply with this condition in the lease. Such use of the roadway, however, could not be construed as a holding over of the term of tenancy on plaintiff's property. No right in this easement or roadway was given to the defendant, but, by the terms of the lease, the defendant was prevented from its use except as a roadway.

The plaintiff by establishing the right to this easement may procure relief in another action, but it cannot affect the case at bar.

The record does not disclose any error, prejudicial to the plaintiff in error. The judgment of the Court of Common Pleas is affirmed.

*Judgment affirmed.*

CUSHING and HAMILTON, JJ., concur.