932 F.2d 1058
 19 Fed.R.Serv.3d 1099
 Abad PEREZ, Appellee,
v.
Anthony CUCCI, as Mayor of Jersey City and Individually;
the City of Jersey City; Glen Cunningham, in his Official
Capacities and Individually; Jaime Vazquez, as City
Councilman and Individually; the Jersey City Police
Department; Walter Adams, as Director of Police and
Individually; John Fritz, as Chief of Police and
Individually; Frank Victor, as Deputy Chief of Police and
Individually; Lieutenant Healy, in his Official Capacity
and Individually; Jersey City Police Officers Benevolent
Association; and Benjamin Lopez, as City Business
Administrator and Individually; and Frank Lorenzo; and Juan Perez,
City of Jersey City, Appellant.
 No. 90-5699.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 25, 1991.
Decided May 17, 1991.
 
 1
 Joseph Healy and Raymond Reddington (argued), Jersey City Law Dept., Jersey City, N.J., for appellant City of Jersey City.
 
 
 2
 Ignacio Perez (argued), Jersey City, N.J., for appellee Perez.
 
 
 3
 Before BECKER and HUTCHINSON, Circuit Judges, and ATKINS, District Judge*.
 
 OPINION OF THE COURT
 
 4
 ATKINS, Senior District Judge.
 
 
 5
 Defendant/appellant City of Jersey City ("City") appeals the district court's denial of its Rule 60(a)[1] Motion to Correct an Order Implementing Amended Judgment in favor of plaintiff/appellee Abad Perez ("Perez").[2] The City contends that the part of the order it sought to strike--an award of backpay for a period following Perez' retirement from the City Police Department ("JCPD")--was not reflected in the amended judgment or supported by the record. Having thoroughly reviewed the record and finding no support for the challenged award, we agree that the court's denial of the City's motion to strike the award was an abuse of discretion.[3] Accordingly, the district court's denial of the City's Rule 60(a) Motion to Correct the Order Implementing Amended Judgment will be REVERSED. In addition, that portion of the order providing for backpay for the period of time following Perez' June 1, 1988 retirement from the JCPD will be STRICKEN.
 
 A. BACKGROUND
 
 6
 The facts relevant to the present appeal can be briefly stated.[4] Plaintiff/appellee Perez joined the JCPD as a patrolman on October 12, 1979, and was promoted to the position of detective on October 11, 1982. He later became president of the Hispanic Law Enforcement Society of Hudson County. During the City's 1985 mayoral campaign, Perez openly and actively supported the candidacy of then-Mayor Gerald McCann. In the June 1985 election, McCann was defeated by Anthony Cucci, a defendant in the underlying lawsuit.[5] On July 1, 1985, the very day that Cucci was sworn in as the new City Mayor, Perez was demoted to the rank of patrolman. Perez v. Cucci, 725 F.Supp. 209, 215-21 (D.N.J. 1989), aff'd, 898 F.2d 139 (3d Cir.1990).
 
 
 7
 Shortly after his demotion, the JCPD granted Perez' request for a leave of absence so he could work for the Los Angeles Police Department ("LAPD") to determine whether he would return or retire from the JCPD. In July 1986, after working for the LAPD for approximately one year, Perez returned to the JCPD. In September 1986, Perez filed the underlying lawsuit against the City alleging, in relevant part, that his July 1, 1985 demotion violated his constitutional rights to freedom of association. The lawsuit also generally alleged that the defendants' acts and omissions caused him loss of self-esteem, public ridicule and embarrassment, humiliation, mental anguish, and pain and suffering.[6] Despite having filed the lawsuit, Perez remained at the JCPD until March 1, 1988, when he began a paid sick leave, which he continued until June 1, 1988, when he retired from the JCPD. Id. at 226-27.
 
 
 8
 Following a bench trial, on May 2, 1989 the district court found, in relevant part, that Perez' July 1, 1985 demotion from detective to patrolman violated his first, fifth and fourteenth amendment rights. See id. at 231-58. However, the court found that defendants' acts and omissions did not cause Perez loss of self-esteem, public ridicule and embarrassment, humiliation, mental anguish, and pain and suffering because the unconstitutional demotion preceded plaintiff's seeking psychological care by approximately two years and also because there existed independent causes of stress, such as family problems and plaintiff's studying for the bar examination. Id. at 227 n. 19.
 
 
 9
 On July 20, 1989 the court entered an amended judgment which, in relevant part, ordered the City to pay plaintiff $4,298.05 as compensatory relief and backpay, calculated as the difference between the rate of pay Perez received as patrolman and the rate of pay he would have received as detective, from the date of his demotion (July 1, 1985) to the date of his resignation (June 1, 1988), excluding the time he worked for the LAPD. The amended judgment also ordered plaintiff's reinstatement to the position he held in the police department "at the level and with the commensurate seniority and benefits to which he would have been entitled at the time of his resignation."[7] Appendix ("App.") 100-01 (amended judgment) (emphasis added); see also Perez, 725 F.Supp. at 222-23 n. 13 (calculating amount of backpay due).
 
 
 10
 After reinstating Perez, the City appealed from the amended judgment on a ground unrelated to the present inquiry. On February 23, 1990, the Third Circuit Court of Appeals affirmed the district court. See Appeal of Jersey City, 898 F.2d 139 (3d Cir.1990). On April 30, 1990, pursuant to Local Rule 25 of the District Court for the District of New Jersey, an unopposed proposed Order Implementing Judgment prepared by Perez was approved by the court and entered on the docket.[8] In addition to ordering the City to pay plaintiff his costs and fees and the $4,298.05 in compensatory relief and backpay for the period between his demotion and his leaving the department, the order directed the following: "the City shall accord plaintiff commensurate seniority and all the benefits which he would have been entitled at the time of his resignation, including, without limitation, (a) appropriate credit for pension payments from June 1, 1988, the date of his "resignation," through May 8, 1989, the date of his reinstatement, and (b) backpay at the appropriate payscale for Detective for the period of time from June 1, 1988 through May 8, 1989, plus interest, as required by law. App. 109-10 (order implementing judgment) (emphasis added).
 
 
 11
 On May 10, 1990, the City filed the Rule 60(a) motion to strike from the order implementing judgment as a clerical error the underlined material, which was not reflected in the amended judgment (the order sought to implement). Compare App. 101 at para. 9 (amended judgment) (providing for reinstatement "at the level and with the commensurate seniority and benefits to which he would have been entitled at the time of his resignation") with id. 109-10 (order implementing judgment) (providing for same but adding above underlined language). On June 28, 1990, the district court heard oral argument on the motion. Apparently construing its July 20, 1989 amended judgment as supporting a finding that Perez had been forced to retire, see App. 120-21 (transcript of oral opinion on motion to correct order) (stating that Perez "should be given the benefits of the salary he would have received had he not been forced to retire"), the court ruled that the award of backpay for the period following the "retirement" was appropriate to make Perez "whole" and denied the motion to correct the order implementing judgment, see App. 121-22. The present appeal followed.
 
 B. SUMMARY OF CONTENTIONS
 
 12
 The City argues that the inclusion of backpay for the period following Perez' 1988 departure from the police force was erroneous because the issue of wrongful, or constructive, discharge was not tried before the court or supported by the evidence adduced at trial. All of the evidence at trial went, instead, to the issue of whether plaintiff's 1985 demotion was motivated by his exercise of his first amendment rights. Perez has been unable to point to any evidence in the record supporting the additional backpay award. According to the City, allowing the court's inclusion of the backpay to stand would be inconsistent with substantial justice.
 
 
 13
 Perez concedes that the district court's opinion following trial contains no finding of wrongful discharge. Perez argues instead that an award of backpay for the period following his resignation nevertheless was appropriate because the record contains evidence that he was wrongfully or constructively discharged from the JCPD. Because of this record evidence, the district court properly supplemented its earlier finding of facts when it denied the City's Rule 60(a) motion to correct the order implementing amended judgment. Perez asserts that the City, in any event, has not met the stiff burden of showing that the court's contested award of backpay was an abuse of discretion and unsupported by the record.[9]
 
 C. DISCUSSION
 
 14
 Rule 60(a), Federal Rules of Civil Procedure, provides for the correction of "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission ... at any time." We review the denial of the City's Rule 60(a) motion to determine whether "the trial court's action was arbitrary, fanciful or clearly unreasonable. Otherwise stated [the City] must show that no reasonable person would concur in the trial court's assessment of the issue under consideration."[10] Stich v. United States, 730 F.2d 115, 118 (3d Cir.1983), cert. denied, 469 U.S. 917, 105 S.Ct. 294, 83 L.Ed.2d 229 (1984).
 
 
 15
 We have little difficulty concluding that the City has met its burden. An award of backpay for the eleven-month period falling between Perez' retirement and reinstatement was appropriate only if the court had found that the City's unconstitutional conduct caused Perez to retire from the JCPD. See Goss v. Exxon Office Systems Co., 747 F.2d 885, 887-89 (3d Cir.1984). Having thoroughly reviewed the record, we are convinced that the district court made no such finding and, consequently, that the court abused its discretion. Our conclusion is supported by the absence of evidence that the court made such a finding and the presence of evidence suggesting that the court found that the City's unconstitutional conduct did not cause Perez' retirement from the JCPD in 1988. Allowing the award to stand would be unfair for an additional reason: the City had no opportunity to present evidence regarding Perez' mitigation of damages during the post-resignation period.
 
 
 16
 First and most importantly, nothing in the district court's extensive factual findings indicates that the court determined that Perez retired as a result of the City's retaliatory or otherwise unconstitutional conduct. See Perez, 725 F.Supp. at 215-31; see also id. at 212 (identifying "[t]he issue [as] whether the civil rights of plaintiff ... were violated when he was demoted ... because he had openly espoused the candidacy of a mayoral incumbent who was defeated in his bid for reelection in 1985") (emphasis added). In addition, neither the second amended complaint nor the final pretrial orders addressed the issue of forced retirement.[11] See Higgins v. Gates Rubber Co., 578 F.2d 281, 283 (10th Cir.1978) (stating that the complaint and pretrial order generally define the scope of a claim). Finally, the opinion states that the differential between what plaintiff would have made as a detective and what he made as a police officer for the period preceding his retirement "reflects the award of backpay to which plaintiff is entitled." Perez, 725 F.Supp. at 256 (emphasis added); see also id. at 222 n. 13 (providing exhaustive calculation of backpay award for pre-resignation period). We can reasonably assume that if the court wanted to award Perez additional backpay for the eleven-month period following his resignation, it would have done so explicitly.
 
 
 17
 Second, what little consideration the court gave the possibility of wrongful discharge suggests that the court found against Perez. Perez' second amended complaint alleged that the City's acts and omissions had caused plaintiff mental anguish, loss of self-esteem, etc., and that this anguish had resulted in Perez' requesting sick leave and ultimately resigning from the JCPD. See App. 20. However, in the opinion following trial, the court expressly held that the psychological conditions suffered by Perez beginning in 1987 were not caused by any unconstitutional conduct on defendants' part. See Perez, 725 F.Supp. at 227 n. 19 (finding that Perez' chest pains and headaches occurred approximately two years following his demotion and could be attributed to independent factors such as plaintiff's family problems and studying for the bar examination).
 
 
 18
 The only other basis advanced by Perez for a finding that he was forced to retire was that following his return from Los Angeles, the City engaged in retaliatory conduct which caused his resignation. However, the trial transcript indicates that the court disallowed pursuit of this claim. As the court stated:
 
 
 19
 [I]n looking over the pretrial order ... I fail to perceive ... any specific allegations relating to retaliatory behavior on the part of the City in this subsequent period.... My question is: During the course of the depositions, any of the depositions, were these contentions [regarding retaliatory assignments leading to constructive discharge] brought forth? ... That, it seems to me, goes to the question of how the City might be prejudiced if the issue were permitted to stand.... I want you [attorneys] to review the testimony. I'm not going to pass on it now. In fairness to the City, I don't want the City ... to have to defend something they were not put on notice they would have to deal with.... I want you to go over the proofs very carefully. I'm going to hold back on this and I ask you to go on to another matter....
 
 
 20
 App. 74-76 (November 23, 1988 trial transcript). The record contains no evidence that this basis for a finding of constructive discharge was ever revisited.
 
 
 21
 Inclusion of the backpay award more than a year after trial is inappropriate for a third reason. Just as the City apparently had no notice to defend against a claim of retaliatory discharge, see quoted block supra, the City never had an opportunity to present evidence that Perez was employed elsewhere during the eleven-month period between his resignation and his reinstatement, or that he was able to work and did not mitigate his damages. Such a showing would have enabled the City to reduce the backpay award. See Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 400-01 (3d Cir.1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977).
 
 
 22
 In sum, we find no record evidence to support the district court's inclusion of an award of backpay for the eleven-month period between Perez' resignation and reinstatement.[12] Perez has been unable to point to any substantial record evidence to the contrary. Moreover, the City never had an opportunity to present evidence on the question of mitigation of damages. Whether we view the present appeal as challenging the district court's denial of the City's Rule 60(a) motion to correct the order implementing the amended final judgment or as challenging the district court's application of Local Rule 25 regarding orders implementing judgment, the result is the same. Based on the lack of record evidence that Perez was forced to retire, the court's denial of the City's Rule 60(a) motion to correct was "arbitrary, fanciful or clearly unreasonable." Stich, 730 F.2d at 118. Alternatively, the district court's inclusion of post-resignation backpay in the Order Implementing Judgment was an abuse of discretion under Local Rule 25 because the order added material terms not found in the amended judgment the order sought to enforce.
 
 D. CONCLUSION
 
 23
 In light of the foregoing, the district court's denial of the City's Rule 60(a) Motion to Correct the Order Implementing Judgment will be REVERSED and that portion of the Order awarding backpay for the period of time from June 1, 1988 through May 8, 1989 will be STRICKEN.
 
 
 
 *
 Honorable C. Clyde Atkins, Senior District Judge of the United States District Court for the Southern District of Florida, sitting by designation
 
 
 [1]
 Rule 60(a) provides as follows:
 Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.
 Fed.R.Civ.P. 60(a) (West 1991).
 
 
 [2]
 The City appeals pursuant to 28 U.S.C. Sec. 1291 (West 1991)
 
 
 [3]
 Because the present appeal may be more appropriately characterized as a challenge to the district court's application of its Local Rule 25, rather than as a challenge to the denial of the Rule 60(a) motion to correct, we consider both challenges, which yield the same result. See infra note 10
 
 
 [4]
 The facts giving rise to the underlying lawsuit are recounted in detail at Perez v. Cucci, 725 F.Supp. 209, 215-31 (D.N.J.1989), aff'd, 898 F.2d 139 (3d Cir.1990)
 
 
 [5]
 Although Perez won a judgment against several defendants in addition to the City--including Mayor Anthony Cucci, Police Director Walter Adams, and City Councilman Jaime Vazquez--those awards have not been challenged
 
 
 [6]
 Perez' complaint also alleged that the City's failure to promote him to the rank of sergeant following his return from the LAPD violated his equal protection rights, that the failure to promote and the demotion violated his section 1983 rights, and that the conspiracy to interfere with these rights and the actual interference violated his section 1985 and 1986 rights
 
 
 [7]
 The amended judgment also ordered the individual defendants to pay a total of $25,000 in punitive damages, and contained an injunction prohibiting the defendants from using political affiliation as a basis for personnel decisions
 
 
 [8]
 Local Rule 25 provides:
 Upon the filing of a mandate or certified copy of the judgment in lieu thereof from an appellate court, the Clerk shall file and enter it and notify counsel for the parties. In the event that the mandate or judgment provides for the costs or directs a disposition other than affirmance, the prevailing party shall submit an order implementing the mandate or judgment.
 
 
 [9]
 The appellee also asks the court to award attorneys' fees and impose sanctions against the City for bringing this frivolous appeal. Because we reverse in favor of the City, we deny Perez' requests
 
 
 [10]
 As noted earlier, we question whether the City's denied motion is properly considered as a Rule 60(a) motion to correct. See Mack Trucks, Inc. v. International Union, UAW, 856 F.2d 579, 594 n. 16 (3d Cir.1988) (explaining that Rule 60(a) encompasses only errors "mechanical in nature, apparent on the record, and not involving an error of substantive judgment") (quotation omitted), cert. denied, 489 U.S. 1054, 109 S.Ct. 1316, 103 L.Ed.2d 585 (1989); see also Appendix ("App.") 121 (excerpt of court's oral opinion denying motion to correct--"I find that my judgment does require"--suggesting that district judge considered substance and not merely mechanics of final judgment); cf. Kelly v. Matlack, Inc., 903 F.2d 978, 985 (3d Cir.1990) (expressing doubt that court's knowing and intentional calculation of damages is type of error contemplated by Rule 60(a))
 "[F]ocus[ing] ... on the function of the motion, not its caption," Aloe Coal Co. v. Clark Equipment Co., 816 F.2d 110, 112 (3d Cir.), cert. denied, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987), we note that a Rule 59(e) motion to alter or amend the judgment would appear at first glance to have been the most appropriate vehicle for challenging the district court's inclusion of the backpay award. However, Rule 59(e) motions must be made within ten days of the court's original judgment, see Fed.R.Civ.P. 59(e) advisory committee's note; the present motion was made almost a year after the court entered its July 20, 1989 amended judgment.
 The appropriate characterization of the denied motion appears to be as a challenge to the order implementing amended judgment on the ground that the district court improperly employed its Local Rule 25 as a vehicle to amend its fact findings. Orders Implementing Judgment submitted pursuant to Local Rule 25 must track the language of the district court's original order, departing only to incorporate the appellate court's imposition of costs or other revisions. See supra note 8. Here, the Order Implementing Judgment diverged from the original order not only to include of the costs of appeal awarded by the appellate court, see App. 104-05, but also to include backpay.
 In any event, whether we characterize the City's challenge to the backpay award as an appeal of the court's denial of the City's Rule 60(a) motion to correct or as an assertion that the court exceeded the authority of Local Rule 25, our present inquiry is essentially the same--whether the district court abused its discretion by including an award unsupported by the record.
 
 
 [11]
 The court notes that these documents were filed before Perez' June 1988 retirement from the force
 
 
 [12]
 In our attempt to determine the basis of the district court's ruling, we note that the court may have misinterpreted point 9 of its Amended Judgment, which states: "Perez ... is reinstated to the position he held in the Jersey City Police Department at the level and with the commensurate seniority and benefits to which he would have been entitled at the time of his resignation." App. 101 (emphasis added). In its opinion denying the City's Rule 60(a) motion, the court apparently read this language as requiring the City to pay Perez backpay for the eleven-month period between Perez' retirement and reinstatement: "since plaintiff was ordered reinstated with all seniority and benefits from the date of his resignation, plaintiff should be given the benefits of the salary he would have received had he not been forced to retire." App. 121 (emphasis added)